Bullard, J.
The facts which led to this controversy are substantially : That John Durand, of Bordeaux, who is also a partner in the house of Durand & Co. of New York, had consigned to Barthet & Co. of this city, for sale, at different times, a quantity of brandy and wines, and that the plaintiffs, Toole & Barriere, became the sureties of the consignees on the Custom-House bonds given for the duties. That Durand & Co. of New York finding that Barthet & Co. were embarrassed, sent their agent, Dupuy, to withdraw from their hands what might remain unsold of the consignments. The brandy and wines were consequently taken *364 by Dupuy, and put on board a ship for New York, when Toole &*Barriere interfered, threatening to have them attached in order to save themselves. Under these circumstances, the agent having taken sundry notes from Barthet & Co. for the balance found due to his principals, writes to Toole & Barriere, on the 6th July, 1839, that he incloses to them those notes amounting to $4696 10, which he requests them to collect for the account of John Durand & Co. of New York, giving them advice of their payment,Sand to follow the instructions of that house. He goes on to say, that', on his arrival at New York, he will cause to be addressed to them a letter by Durand & Co., to guaranty them against all loss which they may sustain in consequence of their having signed the Custom -House bonds for duties on the merchandize consigned by John Durand of Bordeaux, to Barthet &, Co., by the ships Meridian, Cardinal de Cheverus, Lubeck and Indiana. He adds, it is understood that you will neglect nothing to prevent such a loss being sustained. The notes were drawn to the order of Dupuy, and endorsed by him. They were signed by Barthet & Co., then in liquidation. On the same day, Toole & Barriere acknowledge the receipt of the notes, which they say they will retain for collection, and at the same time as collateral security, until those gentlemen give them a guaranty against the loss they may sustain as sureties on the Custom House bonds.
On the return of Dupuy to New York, Durand <fc Co. wrote to the plaintiffs a letter dated August 9th, 1839, in which they say, that Dupuy had furnished them a copy of their correspondence of the 6th of July. After stating the amount already paid by Toole & Barriere, to wit, $3882 18, and the bonds yet to be paid, and stating a balance due to them of $4788 08, they add : “ To guaranty you against any loss which you might sustain in consequence of your endorsements for that amount, he handed over to you as collateral security the following notes of Barthet & Co., (detailing them.) amounting to $4696 10, of which we pray you to make collection as they fall due, and remain possessors of those sums until the house of Barthet & Co. shall have discharged the above stated balance of $4738 08; approving the arrangements (les dispositions) which Mr. Dupuy entered into with you in that view (a cet egard,) and in order to guaran *365 ty you against all loss which might result from your endorsements at the Custom House on the bonds arising from the consignments of our house in Bordeaux to Barthet & Co., it being well understood that you neglect no. means to reimburse yourselves from that house. We write to day to-that house, to urge them to furnish you as soon as possible, security for the ulterior payment of those duties in order to annul the guaranty which you have obtainedfrom Mr. Dupuy.”
The notes of Barthet &. Co. not having been paid, and the plaintiffs alleging that they had been compelled to pay the remaining bonds, the present action was brought against John Du-rand and John Durand & Co., to recover the amount of their advances. The plaintiffs found their right to recover not only upon the guaranty given by the New York house, but upon the fact, that they became sureties on the Custom House bonds for the benefit of the consignor, John Durand of Bordeaux, and that in substance they acted from the beginning as his negotiorum gestores. They allege, that notwithstanding their diligence, they have recovered nothing from Barthet & Co.; that they had obtained a judgment against them ; and that the execution issued thereon had been returned, no property found.
The case was tried by a jury who found a verdict in favor of the plaintiffs for the amount claimed by them, which, after an ineffectual effort to obtain a new trial on the part of the defendants, was followed by a 'judgment, from which the latter have appealed.
Two principal questions have been discussed in this court. First, whether the letters of Dupuy and of Durand & Co., amount to a guaranty in favor of the plaintiffs, and a promise to reimburse them what they had paid, or might afterwards pay as sureties on the bonds. Second, whether, that guaranty was upon the condition that the plaintiffs would use due diligence in collecting the notes of Barthet & Co., and whether they have lost their right to recover by their want of diligence.
I. The letter of Dupuy contains an unequivocal promise to obtain from the house in New York a guaranty to Toole & Barriere. The consideration for this promise was, that the latter abstained from seizing the goods for the duties upon which the bonds had *366 been given, and a large amount already paid by Toole & Barriere. It appears that about $6000 worth of the merchandize remained, which, in consequence of this arrangement, Dupuy forwarded to New York. In his letter, he says nothing of the notes of Barthet & Co. forming any part of the promised guaranty. He simply leaves them for collection in the hands of the plaintiffs, subject to the instructions of Durand & Co., adding, however, that it is understood that Toole & Barriere are to do all they can to avoid any loss resulting to them from their endorsement of the bonds. It is in the answer of the plaintiffs to this letter that the collateral security is first spoken of; they say they will retain the notes for collection, and at the same time as collateral security until the guaranty shall be given. They seem to have understood, that the notes should be regarded only as provisionally a collateral security, until Dupuy should have complied with his promise to obtain the letter of guaranty from Durand & Co. That letter has already been mentioned, and its substance given. Although Durand & Co. appear to have understood that the notes of Barthet & Co. formed a collateral security, yet they approve what was done by their agent, at the same time observing, that it was well understood that Toole & Barriere should neglect no means to secure themselves from Barthet & Co.
We cannot suppose that any of the parties considered the notes of Barthet & Co., which were placed in the hands of the plaintiffs for collection, as forming their only security. At most they were collateral, thereby implying a principal obligation to which they were accessory. Toole & Barriere became the agents of •the defendants to collect, and were authorized to retain the amount, when collected, in order to reimburse themselves.
II. Although the guaranty thus given was not, strictly speaking, upon the condition that the plaintiffs should collect the notes of Barthet & Co., yet there is no doubt they undertook as mandataries to collect them, and are responsible as such for any loss which the defendants may have sustained in consequence of their fault or neglect. We are, therefore, to inquire, what diligence was used, and whether the plaintiffs have rendered themselves liable for the amount of those notes, as if this were a direct action against them. It appears that the first note for $1700, *367 was protested, on the 12th August, 1839, and. Durand & Co. were immediately informed of it, and charged with the costs of protest. They acknowledge this by letter dated the 2d of September, and say that Toole & Barriere are credited with those costs, at the same time praying them not to lose sight of the debt due by Barthet & Co. In the course of the same month, two Custom House bonds fell due amounting to more than eighteen hundred dollars, which the plaintiffs were compelled to take lip. The three notes which fell due successively in September, October and November, of about a thousand dollars each, were not protested; but it appears demand was made, and that the drawers were unable to pay them. It would appear from a letter of the 16th December, 1839, that Durand & Co. had been regularly informed of the steps taken in relation to the notes of Barthet & Co., for they say: “ Please accept our thanks for the trouble you have taken, as likewise for your communications respecting Barthet & Co.’s settlement. You were perfectly right in refusing Mr. Bergeron’s part, although it proves his desire to do us justice.” They then go on to say, that they had received a letter from Bergeron stating, that a part of the disbursements for Custom House bonds had been paid, and that there was shortly to be a final settlement. They ask some explanation on the subject, “ because,” they say, “ as soon as they have settled this irregular business with you, we may then endeavor to obtain something on account of our notes remaining in your hands.” Toole &. Barriere were to follow the instructions of Durand & Co., in relation to the collection of those notes. The letter just mentioned, dated after all the notes had fallen due, is far from giving any instructions to bring suit; and the neglect to have the last notes regularly protested did not impair in the slightest degree the liability of the drawers, although it did release the endorser, who was in fact the agent of the plaintiffs. On the 30th of November, Toole & Barriere write to the New York house : “ In regard to the affairs of Barthet & Co., we can give you no further hopes for the present than Mr. Barthet’s promises. We think that, at this moment, you will not be able to obtain anything; but that in the course of six or eight months he or they will pay up.” The house in New York made no objection to the proposed delay. Finally, in the *368 spring of 1841, suit was brought on the notes, and judgment recovered on the first of April; and the execution which issued soon afterwards was returned nulla bona.
But it is argued, that Barthet & Co. were at the same time indebted to Toole & Barriere, and that the latter received in payment a large amount of bank stock and several city lots. It appears, however, that those transactions took place before the arrangement with Dupuy, and the giving of the guaranty. At that time Toole & Barriere had a right to look to the merchandize, to reimburse to them the duties they had paid as sureties on the bond; and, according to the late bankrupt law, were entitled to a priority of payment out of the whole property of the principals in the bond, in case of their failure.
It is in evidence that repeated efforts were made to obtain payment of the notes before bringing suit; and that, although Barthet was largely indebted to Toole & Barriere, they collected nothing. No instructions were given to bring suit; and it is not shown that any damage resulted to the defendants from the delay, in which they seem to have acquiesced, by not instructing the plaintiffs to bring suit sooner.
This view of the case is wholly independent of any original liability of Durand or Durand & Co. to refund to the plaintiffs what they may have paid as sureties of Barthet & Co., the consignees ; and places their liability on the guaranty promised by Dupuy, and ratified by the defendants. The authorities cited by the defendants’ counsel would be strictly applicable, if the plaintiff sought to recover of the owner, independently of any such engagement. The consideration of the promise to indemnify the plaintiffs was, that they permitted the defendants to withdraw $6000 worth of the goods on which they had paid the duties, and which, so far as the government and the sureties were concerned, were to be considered as the property of the consignees.
We are of opinion, that interest at six per cent was properly allowed, according to the laws of the United States ; and, upon the whole, the question of diligence having been submitted to the jury, we are not satisfied that it becomes our duty to disturb their verdict.

Judgment affirmed.